The next case on the calendar is Pouncy v. Advanced Focus. Good morning. If it may please the Court, my name is Larry Pouncy. I am NEPROSA plaintiff appellant. My argument here stands on whether or not the district court overlooked the facts in my case in terms of discrimination, in terms of hiring, firing and assignment of rate of pay as well as retaliation, hostile work environment. I put in a fraud case, a claim, because the defendant took part of my paycheck and emotional distress. The reason for my appeal, the court paid no attention to the defendant not being or responding to my first motion, which was a motion for judgment on a Rule 12c. They totally disregarded the fact that the defendant did not respond to that claim and the district court said that I could move forward with that motion on summary judgment. In summary judgment I made my case on discrimination where the district court failed to recognize Pouncy's argument on his discrimination case based on race with Pouncy's hiring. The court totally disregarded my claim for discrimination on hiring. Moreover, the defendant did not make a response. Mr. Pouncy, here is my question. You allege that they treated you differently from others and there may be something to that, but where is it that you show, bring in evidence that this is based on race? Because we are limited in what we can do. There are any number of wrongs that we don't have jurisdiction over. We only have them if the reason for the way you were treated was based on race. I'm looking in the record to see the evidence of that. The evidence is that I claim that the defendant hired all African-Americans, no matter what the qualifications that these African-Americans had, to the lower entry level position. It didn't matter whether they had a college degree. It didn't matter in my case that I had several years of high-level sales in which I showed them a past employment check that was over $100,000 and an email that showed that I had an account that was for $3 million that I was working on. These qualifications should have been considered in hiring me as well as promoting me. In addition to promotion, the defendant decided to ask me questions about the higher position that went towards promotion in terms of asking me questions on how certain products or services should be dealt with from their clients. I gave them answers. They, in turn, used those answers, and in the results of those, they gained revenues from those type of clients. So to say that I'm not capable of increasing salary or in hiring because of my past working experience didn't level up to a recruiter that is a telemarketing recruiter at that, for minimum wage, it's my evidence of discrimination. The promotion part is that these people are asking me questions that the project director should have known, being that they were hired and they had these qualifications. In terms of the fraud part, my income that I made was short by them moving my money from one pay period to the next and reallocating the money. This is moving some commission money from one pay period to the other. Right. For example, for example, the October from the 16th to the 31st, I made 12, I think, or $1,200-and-some-odd in that time frame. They only paid me $800-and-some-odd, took the $477.50, moved it over to the next pay period, which was November 15th. Instead of taking that $477 that I already made and put that $477 into what they call a miscellaneous section of my next check, they took that $477 and merged it with the current commission that was from November 1st to November 15th. By doing that . . . You understand from what Judge Calabresi said that in this kind of a lawsuit, it's not enough that you were treated badly or that there was a contractual breach between you and your employer, that the employer did all sorts of wrong things. That's not enough in a case of this sort. You have to show that he did it for the reason that you are an African-American and he wouldn't have done it otherwise. Well, here's the thing with that. It goes back to Sandra Day O'Connor's statement at the Supreme Court. In making those decisions, it would be very, very, very difficult for a plaintiff employee to prove that those intent of discrimination, because nowadays, you're not going to get the N-word, you're not going to get the employer calling the coon . . . I don't mean necessarily on that basis. If there were other people who were not African-American who had the same kind of situation as you and they were treated differently, they were given breaks and they were allowed to do certain things and problems with the pay were corrected immediately and that kind of thing, then you'd have a basis for comparing and saying, okay, well then the whites get treated a certain way, but the African-Americans don't. Well, that's not so much . . . I disagree respectfully, Your Honor, because the prima facie case of McDonnell Douglas versus Green developed a burden mechanism that once the plaintiff proved a prima facie case, it's the defendant's turn to come up and rebut with a non-discriminatory reason. Now, what reason would they have to say that I'm not qualified to do the job of the project director when the defendant themselves are asking me the questions that was posed for the project directors? Now, there is an example of your scenario. They have white project directors that were supposed to handle the question, but yet they gave it to me, an African-American, at a lower rate of pay and a lower position. That there, right off the bat, shows discrimination, as well as the hiring, because they hired all the blacks to the low entry-level position, yet on . . . I'll give you . . . I heard you, but I thought that Judge Walker was focusing on this differential in pay, I'm sorry, on the taking of pay from one period and putting it to another. Do you have any examples of that particular claim being treated differently between whites and African-Americans? It doesn't matter whether it's a difference in that claim, because that claim was by itself fraud. I understand, but we don't have jurisdiction over fraud generally. I mean, our court just can't deal with the fact that there might have been fraud. It has to be fraud that is based on one of these things, so that . . . do you have any . . . I don't understand that you don't have the jurisdiction. We don't have power to . . . if they defrauded you by taking this money from one period to another, that is not something that, in itself, our court can deal with. I'd love to be able to, but I can only deal with it if they did it because you're African-American. But if . . . That would be a state law question. That would be . . . I'm sorry? That would be a state law question if you were defrauded. This is your New York labor law claim, correct? Yeah, New York labor law. Well, this is . . . exactly. Well, it's not so much the labor law claim. The way I wrote it was fraud was fraud, even if they did not discriminate it against me. They're stealing the money. So you're saying that even if I did not have the discrimination or retaliation under the Civil Rights Act, Title VII, that I don't have a fraud case, whereas the New York City human rights law will cover any sort of disparity of . . . Let me explain. If that is the case and we do not have a federal case on other things, then the dismissal of your fraud case was incorrect. Well, let me clear that up for you here. From Section I, the defendant's positioning statement, page 2A, advance focus hired plaintiff as an $8 per hour individual as a minimum wage, even though I had a past history of $100,000 as well as an email that showed that I was dealing with a $3 million account. The defendant in the same document stated that they hired other recruiters. Once I got the defendant's production of documents, it showed that these other recruiters were paid much higher than I was paid. And it was done after I was hired. In one case, they paid this woman three times what they paid me. But the reason for them giving this woman three times the money, who, by the way, one, she was white, two, she was situated to me as a recruiter. The difference in the money that she was paid is because she helped out the higher position of project directors. Whereas when they asked me questions, they didn't pay me any money. So right there is the difference between a white individual and a black. And this was ongoing, because they didn't hire any blacks. The only time that the blacks came into focus is when I started making my complaints. Mr. Pouncey, we've gone well over time, and you wanted to reserve some rebuttal time. Yeah, but I— So I think we should hear from your adversary, and then you can— Well, I didn't get into the other parts, because we spent so much time on the— Well, we have your papers, and we ask questions that occur to us that we have based on those papers. Thank you. But you'll have time on rebuttal. Thank you. Good afternoon, Your Honors. My papers were— Please speak into the microphone. Sorry. My papers, I think, fully addressed all the points in this case, and I really have nothing further other than to say that the You addressed the plaintiff's, the treatment of the labor law claim about the movement of the commissions. Sure. The labor law, well, he has two claims. One is under 190 of the labor law, which is just a definitional section, doesn't have any substantive rights. That's count seven of the complaint. First count eight of the complaint is a violation of 191, which says that commissions must be paid within the 30 days of the month in which they were earned, and pursuant to agreement. Our agreement with Mr. Pouncey and every other commissioned individual was to pay the commissions exactly the way we paid them, and we pay on a twice monthly basis for the weeks completed prior to that pay period. Commissions are paid in the pay period when they're earned. This work that Mr. Pouncey claims was misput into the wrong pay period was earned. This is simply a state law claim. Well, if it were a claim, it would be a state law claim. Yes, we treated everyone the same, white, black, Asian, everyone the same with respect to how we paid the commissions. Yes, Your Honor. But the claim that this was a fraud separately from that is a state law claim. If you had pled a fraud claim, which would include such things as a representation. Sorry? Leaving aside whether you think the claim is well brought or valid, it's a state law claim. Brought is a state law claim, yes. It can only be brought in state court. I don't know. I mean, it could have, right, it could have supplemental jurisdiction over that claim. Yes. Well, if we have, we can have supplemental jurisdiction if we're also bringing others, but if we were to decide in your favor with respect to the others, it could perfectly be appropriate for us to affirm the dismissal, but without prejudice to bringing a state law claim. I don't necessarily agree with that, Your Honor. This case has already been resolved in a final judgment. If you wanted us to, the district court judge didn't say. All the time. We do that all the time. I don't mean to cut you off, but the district court could have said, I am not going to entertain these state law claims. I am going to exercise my discretion and not, once I dismiss the federal jurisdictional claims, I would say I would remand without, but he didn't do that. He decided those claims and he had the jurisdiction to do that. We have a hundred cases where the district court does that and we say, you should have dismissed without prejudice. You can find, I'm not going to cite them to you, but you can find them all over the book. Okay. If, Your Honor, if that's the rule, I suppose that that's the rule. I don't know that there's any basis to do that here, given the fact that there's no fraud pled, and we'd rather not see Mr. Pouncey back in it. He had another claim against our company when he brought that claim and it's been resolved, but if that's the ruling, I suppose that's the ruling. Now, he, the, turning to the race discrimination claim, Mr. Pouncey says that he tried repeatedly to be promoted to project director during the period he worked there, and that was, I think, from June of 2011 to November 2014, and that others were promoted and that he ended up being, telling them how to perform their job, or being asked to tell other employees how to perform their jobs, rather than having these supervisors do it, and that this was on the basis of race. Well, that's factually incorrect, and there's absolutely no support in the record to substantiate that, but blacks were promoted to the position, whites were brought in with significantly more experience, and Mr. Pouncey simply was not qualified for this position. When I asked him at that position what the job entailed, he didn't even know. In his argument, he said that blacks were promoted only after he brought his claim. That's what he said toward the end of his argument, and that came as a bit new to me. What do you have to say to that? Were blacks promoted before he brought his claims? Yes. Blacks were promoted while he was employed there. He didn't bring his claim until after he was no longer working there. He never, to our knowledge, asserted any sort of ongoing claim of, you're not promoting me because I'm black. That only happened after he left. And the record shows, I have submitted an affidavit from one of his managers who said that they did talk about promoting Mr. Pouncey on an ongoing basis, and this black manager told him he's not qualified for that position. And I think you could, based upon all the evidence, including the evidence he submitted to court and his written communication skills, would agree that we could judge that he's not qualified for this position, and we fairly did. But it wasn't anything to do with his race. He happens to be black. He happens to be not promoted, but that does not mean he was not promoted because he's black. That's the case that Mr. Pouncey has brought. Other black people who were promoted obviously wouldn't say the same thing. They do promote blacks, and his supervisor was black. So where that comes from, some connection between his race and the decision not to promote him, rather than the skills with which he brought to this position. And if you want, the questions we asked him were basic questions about automotive industry, not about his job duties as a recruiter, and certainly not about the job duties of the manager, what they're supposed to do, the project manager. So with that, I will sit down. Thank you. With this information about the asking of questions, this is another problem that is a problem with the Civil Rights Act, because they hired the Caucasian woman three times my salary, and the reason they gave, as a non-discriminatory reason, was the fact that she was answering questions. Now, she was given this portion of money in her salary. I was given an hourly wage. The other thing that I didn't bring up in the discrimination was the retaliation part of the claim. And the retaliation is pretty clear, where I started, my point of making my claim was make in ways to hire or promote blacks. There is one individual that I brought up, Erica Easley. She was there from 2010, prior to me being hired. She was a recruiter. Once I started making my claims, they promoted her along with two other young black females. But going back to the, so I don't get too much time here, the portion of the claims that he's making with the salary, the salary was taken from, I guess you understand that portion of it, but the retaliation happened is a big factor. The last meeting that I had with the defendant's CEO is the biggest factor of the retaliation, along with the fact that once I was fired, they retaliated against me again because at that last meeting with the CEO, I told him that I was complaining about the discrimination as well as the stealing of the money. And when I told him I was going to report him to the agency, that's when he got very riled up and started banging on the desk, got up out of his seat, walked around to me and said, you're dismissed, you're out of here. So as I was going out, I said, well, let me make sure that I understand this. And I asked him, are you terminating me? And he was still fired. He said yes. And his president was standing there and he witnessed this. So the fact that he discriminated against me and retaliated me at that meeting on November 18, 2014, shows that this was, and they said that I didn't have a protective activity. When right then and seconds after I made the protective activity, he fired me. And he said he didn't fire me, but after I made my complaints to the New York Labor Standards and the EEOC from November 2014 to January 2015, somewhere between January 2015 to June 2015, the defendant made false claims to the unemployment division of the New York State Department of Labor. The Department of Labor denied my claims for unemployment. I appealed. The defendant didn't show up to the appeal hearings. Not the first. The judge said, okay, we're going to adjourn and we'll come back and see if they have a reason for not showing. They didn't show the second time. So the non-responsive and reversed the claim and I was able to get my payments. But that, I want the court to understand, there is a civil rights violation that's stated here as well as in terms of the fraud case, a case called, which I based it off of, TXO Production Corp versus Alliance Resource Corporation, which was a big case because it dealt with the compensatory ratio to punitive. And I also named Laurier versus Heffer at 607 F supplement second 403. And it says at 407. It's in Easton District case 209. Also saying fines. We have your papers and we've looked at them carefully and you've stated your retaliation point, which is what you wanted to use your rebuttal time for. So we're well over time and I'm going to thank you for your argument. And thank you both. And we're going to take the uh, that's the last case to be argued on the calendar. I've already announced we have one submitted case, United States v. Smith. So I'll ask the clerk to adjourn court.